IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ROBERT CARL McKAY, | § |
| PETITIONER, | § |
| | § |
| v. | § CIVIL ACTION NO. 4:08-CV-345-Y |
| | § |
| NATHANIEL QUARTERMAN, DIRECTOR, | § |
| TEXAS DEPARTMENT OF CRIMINAL | § |
| JUSTICE, CORRECTIONAL INSTITUTIONS | § |
| DIVISION, | § |
| RESPONDENT. | § |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United

States District Court for the Northern District of Texas. The Findings, Conclusions and

Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.      NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner pursuant to 28 U.S.C. § 2254.

B.      PARTIES

Petitioner Robert Carl McKay, TDCJ-ID #1182106, is confined by the Texas Department

of Criminal Justice, Correctional Institutions Division, in the Coffield Unit in Tennessee Colony,

Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal

Justice, Correctional Institutions Division.

C.      CASE HISTORY

McKay was indicted and tried in Cause No. 0859079D in the 297th Judicial District Court of Tarrant County, Texas for aggravated robbery with a deadly weapon.  The complaining witness was car salesman Stephen Squire, who testified that he had accompanied McKay to test-drive a van on August 31, 2002, when McKay forced him out of the vehicle at gunpoint and drove off.  (5 Rep. R. 17-32).  A jury found McKay guilty of aggravated robbery as charged in the indictment.  (Clerk's R. 55).  McKay pleaded true to the repeat-offender notice in the indictment and elected to have the court assess punishment.  The court assessed a punishment of life imprisonment. (Clerk's R.  59).

The Texas Court of Appeals affirmed the trial court's judgment on direct appeal, and the Texas Court of Criminal Appeals refused McKay's petition for discretionary review.  *McKay v. Texas*, No. 2-03-296-CR (Tex. App.–Fort Worth March 17, 2005, pet. ref'd).  McKay has filed one post-conviction state application for writ of habeas corpus,[1] which the Texas Court of Criminal Appeals denied without written order based on the findings of the trial court without a hearing.  *Ex parte McKay*, No. WR-69,031-01 (Tex. Crim. App. Feb. 6, 2008).  McKay filed his federal petition for writ of habeas corpus on April 21, 2008.

D.      ISSUES

1.      McKay alleges that he was denied the effective assistance of counsel because

    a.      counsel conducted an inadequate investigation;
    b.      counsel did not object to the prosecutor's use of the term "victim;"  and
    c.      counsel failed to request a limiting instruction when extraneous offense evidence was introduced at trial.

2.      McKay alleges that he was denied due process and a fair trial because

---

[1] McKay alleges that he filed at least one pro se state application for writ of habeas corpus and several pro se motions before trial, but beyond a conclusory assertion that the record should be expanded to include these materials, he has not shown that his pretrial application(s) or pro se motions are relevant to the present proceedings. *See generally* Rule 7, Rules Governing §2254, 28 U.S.C. foll. §2254 (addressing expansion of the record).

      a.      the trial court admitted extraneous offense evidence; and

      b.      the trial court failed to hold an adequate competency hearing and denied him access to his medication.

E.      RULE 5 STATEMENT

Respondent agrees that McKay has exhausted his state court remedies.

F.      LEGAL STANDARD FOR GRANTING HABEAS CORPUS RELIEF

The standards codified in 28 U.S.C. § 2254 guide our review of a petition for writ of habeas corpus filed by a state prisoner:

> (d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim—
>
>       (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>       (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Lindh v. Murphy*, 521 U.S. 320 (1997). Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination. *See* 28 U.S.C. § 2254(d)(1)-(2); *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere disagreement with the state court is not enough—the standard is one of objective reasonableness. *Id.* In addition, state court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This deference extends not only to express findings of fact, but to the implicit findings of the state court.

*Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006).

G.    DISCUSSION

    1.    Ineffective Assistance of Counsel

      McKay contends that he was denied his Sixth Amendment right to the effective assistance of counsel.  He complains that counsel did not conduct an adequate investigation, failed to object when the prosecutor used the term "victim" to refer to the complainant, and failed to request that a limiting instruction be given to the jury regarding the use of extraneous offense evidence.

      The two-pronged standard by which a claim of ineffective assistance of counsel is measured is set forth in *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984).  The first prong  requires the defendant to show that counsel's performance was deficient in that the errors made were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id*. at 687, 104 S.Ct. at 2064.  The second prong requires the defendant to show prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id*. at 694, 104 S.Ct. at 2068.  The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one.  *Id*. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d 674.

      McKay contends that defense counsel was ineffective in failing to locate two allegedly favorable witnesses: Natasha Williams and Jason Rudd.  The state habeas court reviewed McKay's complaint, but found that counsel had thoroughly investigated and prepared for the defense of the State's case against McKay.  (State Habeas R. 95).  Claims of ineffective assistance are mixed questions of law and fact.  *Id*. at 698, 104 S.Ct. at 2070.  Because the state court denied relief on this claim, the federal court cannot grant habeas relief unless the state court's decision involved an unreasonable application of the law to the facts.  28 U.S.C. § 2254(d)(1).

At trial, evidence was presented that McKay was arrested in the lobby of a hotel and that a weapon and materials associated with forgery, mail fraud, thefts, and other offenses were found when the contents of his hotel room were inventoried.  (5 Rep. R. 155-56).  McKay asserts that Williams was in the hotel room when he was arrested and there was no proof of who owned the items found in the room or that he even knew about the items, thus counsel was deficient in not investigating Williams.  McKay also contends that defense counsel should have called Jason Rudd as a witness to corroborate McKay's testimony that he and Squire were acquaintances, that Rudd had introduced them to each other, that the three men had used drugs together, and that McKay and Squire conspired to fake a robbery so McKay could steal the van, sell it, and split the money with Squire.  Squire testified in rebuttal that he had never met McKay before the day of the robbery.

During the state habeas proceedings, McKay's trial counsel, Brian Willett, provided an affidavit in which he affirmed that his investigator had tried to interview Williams, but could not find her.  (State Habeas R. 51, 55).  Willett also noted that Williams was charged with another carjacking offense that involved McKay, and therefore, he did not believe they could compel her to testify even if they had found her. (State Habeas R. 51, 56).  As for Rudd, Willett stated that McKay did not tell him the story about scheming with Squire to steal the van until the day before trial began.  (State Habeas R. 52). McKay previously told the defense team's investigator that the offense occurred exactly as Squire had reported to the police. (State Habeas R. 54).  Attempts were made to find Rudd, but his whereabouts were unknown.  (State Habeas R. 52).

Co-counsel Steve Postlewate was hired shortly before the trial began and explained that he had little knowledge of the investigation conducted before that point.  (State Habeas R. 63). However, Postlewate affirmed that McKay did not disclose the existence of a conspiracy between himself and Squire or identify Rudd as a material fact witness until the day before trial.  (State

-5-

Habeas R. 66).  Postlewate then contacted the car dealership and learned that Squire was considered an honest and trustworthy salesperson, his only known problem was a diabetic condition, and they knew nothing of Squire having a drug problem as McKay alleged.  (State Habeas R. 52, 66). Postlewate also asserted that reasonable efforts were made at the last minute to locate Rudd, and he attributed the failure to find Rudd to McKay for withholding the information.  (State Habeas R. 66).

The state habeas court relied on defense counsels' affidavits over McKay's self-serving claims, and McKay has not rebutted the state court's findings of fact or demonstrated that it was otherwise unreasonable for the state court to find the attorneys' version of events more credible. (State Habeas R. 90-91).  Moreover, complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness's testimony  would have been are largely speculative.  *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir.2001).  Where the only evidence of a missing witness's testimony is from the defendant, the court views claims of ineffective assistance with great caution.  *Sayre*, 238 F.3d at 635-36; *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir.1986).  McKay has not established that counsel's investigation was inadequate or that Williams and Rudd possessed information that would have aided his defense even if counsel had located and interviewed them.

McKay also complains of counsel's failure to develop issues related to his mental impairment and competency to stand trial.  McKay cut his wrists on the day that his trial was scheduled to commence.  (State Habeas R. 52, 64).  The trial court ordered a competency examination, which was performed by Barry Norman, Ph.D.  (Clerk's R. 47).  After examining McKay, Norman offered the preliminary opinion that McKay was competent to stand trial.  (Clerk's R. 48).  Norman later filed a final report detailing the basis for his opinion.  In particular, Norman

observed that McKay had a history of drug abuse and demonstrated a poverty of judgment.  Norman diagnosed depression, a personality disorder, and bipolar disorder, but he also opined that McKay was extremely manipulative, understood the proceedings against him, and was able to comprehend the instructions and advice of counsel and make rational decisions based on that advice.  (Clerk's R. 76-78).

McKay asserts that defense counsel was deficient in accepting Norman's preliminary report at face value and not questioning Norman about the basis for his opinions before trial commenced because Norman's final report reveals information relevant to the issue of his competency and the existence of a mental condition that could have been used as mitigating evidence with respect to punishment.  (Clerk's R. 76).  Defense counsel responded to McKay's allegations during the state habeas proceedings by noting that he had delayed his trial by cutting himself and causing wounds that were superficial and not life-threatening.  He was examined and found competent, and thereafter fully participated in the trial.  (State Habeas R. 52-53, 64).  Counsel affirmed that McKay was able to communicate with them without difficulty, never displayed a lack of understanding of the process, assisted in and made decisions about his defense, and was cognizant enough of the proceedings to avoid moving around when he testified to avoid showing his leg shackles to the jury.  (State Habeas R. 64).  In addition, counsel noted that McKay had no difficulty testifying in detail about the alleged conspiracy with Squire to steal the van, and he otherwise displayed no signs to counsel that he was not legally or factually competent.  (State Habeas R. 64).  Although McKay also complained that counsel should have challenged Norman's qualifications, Postlewate stated that Norman's services were frequently used by both the courts and the defense bar and that there was no basis for questioning his credibility in McKay's case.  (State Habeas R. 64).

The state habeas court reviewed the record related to the issue of McKay's competency, (State Habeas R. 91-92), and found that counsel had provided reasonably effective assistance in this regard.  (State Habeas R. 92).  McKay has not rebutted the state court's findings of fact with clear and convincing evidence to the contrary, nor has he shown that the state court was unreasonable in rejecting his complaints about counsel's failure to further investigate his competency or the possible existence of a mitigating mental disorder.[2]

McKay also contends that defense counsel should have objected when the prosecutor referred to Squire as the "victim."  McKay complains that the prosecutor was making a comment on the weight of the evidence.  McKay relies on a state appellate court case in which reversible error was found because the trial court used the term "victim" in the jury charge to refer to the complaining witness in an aggravated sexual assault case.  *See Casey v. State*, 160 S.W.3d 218 (Tex. App.–Austin 2005), *rev'd*, 215 S.W.3d 870 (Tex. Crim. App. 2007).  The appellate court reasoned that the trial court was commenting on the weight of the evidence.  *Id*. at 230.  *Casey* is distinguishable on its face as it involves the trial court's neutrality in instructing the jury.  *Cf. Nichols v. Scott*, 69 F.3d 1255, 1282 (5th Cir. 1995)(noting that prosecutor may not express personal belief in defendant's guilt, but may comment on weight of the evidence).  Moreover, the Court of Criminal Appeals reversed the lower court's decision in *Casey* and found no error because the trial court had used language that tracked the applicable state law.  *Casey v. State*, 215 S.W.3d 870, 885-87 (Tex. Crim. App. 2007).

Counsel is not ineffective for failing to make frivolous objections. *See Green v. Johnson*,

---

[2] McKay's allegations that Norman's report had any mitigating value were not expressly addressed by the stat court, but implict findings are entitled to the same deference as express determinations of the facts.  *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006). And as Respondent notes, Norman's observations about McKay's poor judgment and manipulative behavior were unlikely to be helpful or mitigating.

160 F.3d 1029, 1037 (5th Cir. 1998).  Furthermore, McKay has not established a reasonable likelihood that the jury would not have found him guilty but for the prosecution's use of the term "victim."  He has not shown that defense counsel's failure to object amounts to constitutionally ineffective assistance of counsel.

McKay asserts that counsel also rendered ineffective assistance in failing to object when one of the State's witnesses testified about McKay's connection to certain extraneous offenses, especially when most of that testimony was hearsay.  He also contends that counsel should have requested a limiting instruction be given to the jury regarding the use of extraneous offense evidence.

Tommy Lenoir, an investigator for the Arlington Police Department, testified during the prosecution's presentation of its case-in-chief and in rebuttal after McKay testified for the defense.  During rebuttal, Lenoir was allowed to testify that McKay was charged with another aggravated robbery involving a vehicle, that a weapon was removed from McKay's hotel room after his arrest, and that the economic crimes unit was interested in other items found in McKay's room that were related to forgery, mail fraud, theft, and other offenses.  (5 Rep. R. 154-56). Lenoir explained that McKay was known to engage in forgery, take other people's identities, and empty out their financial or bank accounts.  (5 Rep. R. 156).  The jury charge included a limiting instruction about the proper use of extraneous offense evidence.  (Clerk's R. 51-52).

The court need not address any deficiencies in counsel's performance because the record shows that McKay cannot satisfy the second prong of *Strickland*.  McKay testified in his own defense and admitted that he had a 1988 theft conviction involving a stolen car, a 1989 misdemeanor theft conviction, a 1990 misdemeanor theft conviction, a 1992 theft conviction, a 1991 conviction

for delivery of a controlled substance, a 1994 conviction for driving while intoxicated, a 1995 conviction for theft of stolen property between $750 and $20,000, and a 1999 conviction for delivery of a controlled substance.[3] (5 Rep. R. 120-23, 139). McKay also testified that he obtained Squire's social security number, driver's license number, and other personal information–allegedly with Squire's agreement–so McKay's roommate could create fake identification for a fraudulent financial scheme. (5 Rep. R. 124-26). He even admitted stealing the van, although he maintained that he did so with Squire's voluntary participation. (5 Rep. 117-19). Even if counsel should have objected to Lenoir's testimony[4] or requested an additional limiting instruction, there is no reasonable probability of a different verdict had Lenoir's testimony about extraneous offenses been excluded or a further limiting instruction given.

McKay has not shown that the state court's rejection of his complaints of ineffective assistance of counsel was the result of an objectively unreasonable application of the law to the facts.

2.      Trial Court Error

McKay contends that the trial court abused its discretion in admitting extraneous offense evidence, not adequately investigating the issue of McKay's competency, and denying McKay access to his medication during trial. None of his contentions entitled him to relief.

In order to meet the threshold of a constitutional violation in the admission of this evidence, the petitioner must show that the evidence was so unduly prejudicial that it rendered the trial

---

[3] Before testifying, McKay affirmed that his attorneys had informed him that there were as many as fifteen extraneous offenses that might be introduced at trial if he chose to testify. (5 Rep. R. 111-13).

[4] On direct appeal, McKay complained about the admission of the other aggravated robbery. The appellate court agreed that the evidence was improper, but found the error was not preserved because trial counsel had failed to make a contemporaneous objection. *McKay*, No. 2-03-296-CR, slip op. at 5.

fundamentally unfair.  *See Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991). The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.  *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir.1998).  And even if the admission of evidence is constitutional error, the claim still fails if the petitioner has not shown that the testimony had a substantial and injurious effect or influence in determining the jury's verdict.  *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).  *See generally Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).

Lenoir's testimony about a pending aggravated robbery charge and the items found in McKay's hotel room was not a crucial, highly significant factor at trial, and the admission of that testimony cannot be said to have a substantial and injurious effect or influence on the jury.  McKay's lengthy criminal history was already before the jury because he elected to testify.  The prosecutor's case was strong, and McKay admitted stealing the van even if he tried to share the blame with Squire.  The prosecutor also produced evidence indicating that the story about Squire's complicity was of recent origin.  (5 Rep. R. 131-32).  Lenoir's testimony added little to the proceedings, and to the extent the testimony should have been excluded, any error is overshadowed by evidence that establishes that McKay committed the offense for which he was on trial.  As it is "highly improbable" that the jury would have reached a different verdict had the extraneous offense evidence been excluded, no relief is warranted.  *See Bigby v. Dretke*, 402 F.3d 551, 564 (5th Cir. 2005).

McKay also complains that the trial court did not conduct an adequate competency hearing. The trial and conviction of a defendant while he is mentally incompetent constitute a denial of due

process. *See Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S.Ct. 1373, 1376, 134 L.Ed.2d 498 (1996). A defendant may not be tried unless he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him. *Id*. at 354, 116 S.Ct at 1377. A trial court must hold a competency hearing when there is evidence before the court that objectively creates a bona fide question as to whether the defendant is competent to stand trial. *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir.1980). The accused must present facts sufficient to "positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to his mental competency at the time of trial." *Carter v. Johnson,* 131 F.3d 452, 460 (5th Cir.1997)(quoting *Lokos*, 625 F.2d at 1261). Moreover, the state court is not required to conduct a full-blown hearing every time there is the slimmest evidence of incompetency. *Holmes v. King*, 709 F.2d 965, 967 (5th Cir. 1983). Instead, the adequacy of the procedures varies according to the facts. *Curry v. Estelle*, 531 F.2d 766, 768 (5th Cir.1976).

After McKay cut his wrists, the trial court ordered a competency examination. (State Habeas R. 97). The psychologist evaluated McKay and submitted both a preliminary report and a final report in which he opined that McKay was competent to stand trial. (State Habeas R. 97). The state habeas court acknowledged that McKay had been diagnosed with depression, but found that the mere existence of a mental disorder or suicidal tendencies did not raise doubts about his legal competency.[5] (State Habeas R. 98). The state habeas court concluded that the trial court adequately examined the issue of McKay's competency to stand trial. (State Habeas R. 97-98). McKay has not shown that the state court's determination is unreasonable, and he fails to rebut any

---

[5] By his own admission, McKay has a substance abuse problem; however, evidence of drug addiction does not require that one be found incompetent. *See Holmes*, 709 F.2d at 968.

of the underlying factual findings with clear and convincing evidence.[6]

McKay further contends that the trial court deprived him of his medication, but produces nothing but his own self-serving statement to support his contention.  There is no evidence in the state court record regarding any medication prescribed for McKay at the time of trial, and there is no evidence that the trial court directed that any medication be withheld.  McKay has not shown that the trial court committed any error, much less constitutional error.  Moreover, relief is appropriate only if the error has a substantial and injurious effect or influence in determining the outcome of the proceedings.  *Fry v. Pliler*, 551 U.S. 112, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007); *Brecht*, 507 U.S. at 637, 1113 S.Ct. 1710.  Even if McKay could establish constitutional error, he does not argue or demonstrate that his trial was affected in any manner.

McKay has not established that the state courts acted unreasonably in denying relief based on the admission of extraneous offense evidence, his competency to stand trial, or the denial of his medications.  He is not entitled to habeas relief for his complaints of trial court error.

H.       EVIDENTIARY HEARING

McKay requests an evidentiary hearing.  There are statutory prerequisites for holding an evidentiary hearing:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on–
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>> (ii) a factual predicate that could not have been previously discovered

---

[6] Defense counsel affirmed that McKay fully participated in the trial.  (State Habeas R. 52, 64).

through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). *See also Williams v. Taylor*, 529 U.S. 420, 432, 120 S.Ct. 1479, 1488, 146 L.Ed.2d 435 (2000). Even if the statutory prerequisites are satisfied, the district court has discretion in deciding whether an evidentiary hearing is warranted. *See Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000). When the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007). Moreover, the Fifth Circuit has determined that a full and fair hearing is not a precondition to according a presumption of correctness to state court findings of fact or applying the deferential standards of review prescribed by Section 2254(d). *Valdez v. Cockrell*, 274 F.3d 941, 949 (5th Cir. 2001).

McKay does not show that his claims rely on any new and retroactive rule of constitutional law or a factual predicate that could not have been previously discovered through the exercise of due diligence, and he does not demonstrate that but for alleged constitutional error he would not have been found guilty. McKay has not demonstrated that he is entitled to a hearing under Section 2254 or that a hearing would be of any assistance in disposing of his claims.

RECOMMENDATION

The petition for writ of habeas corpus should be denied. The request for an evidentiary hearing should be denied.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until June 4, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until June 4, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to

the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby

is returned to the docket of the United States District Judge.

SIGNED MAY 14, 2009.


     /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE